United States Courts
Southern District of Texas
FILED
JUN 1 3 2003
Michael N. Milby, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HARVEN MICHAEL MCKENZIE, | § | JOINTLY ADMINISTERED |
| | § | UNDER CASE NO. |
| DEBTOR | § | 95-47219-H5-7 |
| | § | CHAPTER 7 |
| TIMOTHY STEWART MCKENZIE, | § | |
| | § | |
| DEBTOR | § | |
| | § | |
| STEVEN DARRYL MCKENZIE, | § | |
| | § | |
| DEBTOR | § | |

| | | |
|---|---|---|
| W. STEVE SMITH, TRUSTEE | § | |
| Plaintiff | § | |
| | § | ADVERSARY NO. 97-4155 |
| VS. | § | |
| | § | |
| HARVEN MICHAEL MCKENZIE, | § | |
| MCKENZIE METHANE POLAND CO., | § | CONSOLIDATED FOR TRIAL WITH |
| EUROGAS, INC., WOLFGANG RAUBALL, | § | ADVERSARY NO. 97-4114 |
| REINHARD RAUBALL, MCK | § | |
| DEVELOPMENT, CLARON N.V., | § | |
| JEFFREY, LTD., OKIBI N.V., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' REPLY TO TRUSTEE'S RESPONSE TO DEFENDANTS' AMENDED JOINT MOTION TO DISMISS TRUSTEE'S <u>THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF</u>**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

NOW COMES, EuroGas, Inc. ("EuroGas") and Wolfgang Rauball and Reinhard Rauball (together referred to hereinafter as the "Rauballs" and with EuroGas, referred to as the "Defendants"), subject to the Rauballs' claim of lack of personal jurisdiction pursuant to Fed.R.Bankr.P. 12(b)(2), and file this Reply to Trustee's Response to Defendants' Amended

Joint Motion to Dismiss Trustee's Third Amended Complaint and Supporting Brief, and in support thereof would respectfully show the Court as follows:

A.     <u>Turnover – Section 542</u>

Trustee defends his claim for turnover on the basis that Defendants position would require multiple actions and that the alleged alter egos are named in the Third Amended Complaint for purposes of reverse veil piercing. Trustee's arguments miss the point as it appears that Trustee misunderstands Defendants' argument concerning this claim. Defendants are not suggesting that Trustee is required to pursue three separate actions. Rather, Defendants contend that this cause of action fails to state a claim upon which relief can be granted since it presupposes that a violation of Section 542 has occurred. Trustee is not seeking turnover of property of the estate, but rather, a damage claim for "breach of the statutory duty" of Section 542.

Defendants' argument is that a "breach of the statutory duty" simply cannot occur where there has been no determination or legal adjudication that property titled in a legally distinct entity in fact constitutes property of a debtor's estate. Moreover, as a matter of law neither allegations of, or a finding that, the distinct entity is an alter ego of the debtor relegates the property at issue to property of the estate. An alter ego finding does not merge the assets of the entity with those of the debtor, but rather constitutes an equitable remedy that imposes liability on the alter ego entity for the debtor's debts. The remedy simply enlarges the pool of assets available for creditors to obtain satisfaction of their debts. *See, In re McKenzie Energy Corp. et al.*, 228 B.R. 854, 870 (Bankr. S.D. Tex. 1998); *Maiz v. Virani*, 311 F.3d 334, 346 n. 11 (5th Cir. 2002) (recognizing that the result of reverse veil piercing is that "two separate entities merge into one for *liability purposes*").

The flaw in Trustee's reasoning is further evidenced in his contention that Maiz is not applicable to the instant case and his effort in distinguishable the case. *Maiz's* relevance is not based on the court's application of the Texas Turnover Statute, Tex. Civ. Prac. & Rem. Code § 31.002); rather, its significance is in the court's underlying recognition that offshore entities, though alleged to be alter ego, are distinct and separate legal entities that have substantive rights in their assets. *Maiz*, 311 F.3d at 345 ("we cannot escape the fact that Sanig is an actual corporation. Sanig and Tres Vidas are distinct legal entities that have substantive property rights in the assets in which they hold title."). Since MCK, Claron, Okibi and Jeffrey have cognizeable substantive rights in the property at issue regardless of their being alter egos, there cannot be a violation of Section 542 or breach of any duty under that statute by either Reinhard Rauball or Wolfgang Rauball.

Furthermore, Trustee's discussion of the law concerning veil piercing is not completely accurate. For instance, Trustee cites *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635 (5th Cir. 1991) as a case upholding application of the alter ego doctrine in imposing liability under a reverse piercing theory. This statement is an erroneous characterization of the court's ruling. *Permian Petroleum* did not involve a reverse piercing theory, but rather involved application of the sham doctrine to a situation where one corporation purchased the assets of another. See 934 F.3d at 644. In rejecting application of the alter ego doctrine, the Court stated:

> As the factors listed by the Texas Supreme Court suggest, the alter ego doctrine generally applies when a party seeks to hold an individual or entity liable for the obligations of a corporation in which the individual or entity owns stock. *See Zahra Spiritual Trust v. United States*, 910 F.2d 240, 245-46 (5th Cir. 1990). The alter ego doctrine may also apply in "reverse piercing" situations in which a party seeks to hold a corporation liable for the obligations of a shareholder. *See id.* at 244-46. In *Zahra*, we emphasized that Texas courts will not apply the alter ego doctrine to directly or reversely pierce the corporate veil unless one of the "alter egos" owns stock in the other. *See id.* at 246.

<u>DEFENDANTS' REPLY TO TRUSTEE'S RESPONSE TO DEFENDANTS' AMENDED JOINT MOTION
TO DISMISS TRUSTEE'S THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF – Page 3</u>

> *Permian correctly asserts that the alter ego doctrine does not apply to today's case.* The record does not show that either Permian or IDEC owned stock in the other at any relevant time. Nor did Pemex present sufficient proof that Permian and IDEC failed to follow separate corporate formalities. *Our affirmance of the district court on this issue is based not on alter ego but on the Texas sham to perpetrate a fraud doctrine.* (Emphasis added.).

934 F.2d at 643.

Moreover, Trustee's continued assertion of the "sham to perpetrate a fraud" strand of veil piercing to establish alter ego has no merit. It is well established that only a finding of alter ego will support a "reverse piercing." *Zahra Spiritual Trust v United States*, 910 F.2d 240 (5th Cir. 1990). This holding was recognized by the district court on remand, where the court stated: [i]n *Zahra* [ ] the Fifth Circuit held that only the alter ego theory is available to reverse pierce and that evidence of 'illegal purpose' and 'sham to perpetrate a fraud' are not to be considered." See, 1992 U.S. Dist. LEXIS 9448, *7-8 (W.D. Tex., June 22, 1992), *aff'd*, 38 F.3d 569 (5th Cir. 1994).

Finally, as to the application of Section 542 as to Wolfgang Rauball, Trustee's contention that Wolfgang Rauball controlled the shares and debentures is contrary to his allegations that Reinhard Rauball held such property as a trustee.

### B. Section 543

Trustee's position concerning the application of Section 543 as to Reinhard Rauball has no merit. Section 101(11) expressly defines a "trustee" as either a trustee appointed in a case or proceeding under Title 11 or a trustee "that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors." Reinhard Rauball clearly does not fall within any of these descriptions, nor does Trustee contend that any one of these circumstances exists. Consequently, this cause of action fails to state a claim upon

which relief can be granted and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), made applicable hereto by Fed.R.Bankr.P. 7012.

### C. Breach of Contract

Trustee contends that the breach of contract claim was asserted in his First Amended Complaint to which no sustainable objection was raised and that EuroGas "likely waived [its] objection." This argument fails since EuroGas sought either dismissal of the First Amended Complaint or a more definite statement due to the insufficiency of the pleading's allegations. The Court ordered Trustee to file a more definite statement.

Trustee's suggestion that Adversary No. 99-3444 should be treated as being subsumed in this action is not appropriately considered since its beyond the issues raised by Defendants' motion and there is no pending motion requesting for consolidation of the actions. Trustee has had no less than seven months to seek any consolidation of the suits as the issue was raised in Defendants' earlier papers.

### D. Fraud in the Inducement

Trustee contends that his claim for fraudulent inducement is adequately pled. Trustee argues that EuroGas promised to provide certain information, that those representations were material and the promises could have easily been performed. Trustee further contends that the providing of accurate information was never intended. The flaw in Trustee's reasoning is that Trustee fails to distinguish between the allegedly broken promises made by EuroGas, which is the basis of Trustee's breach of contract claim, and the falsity of the representations at the time they were made. The Third Amended Complaint fails to contain any allegations that the statements were false or known to be false when made. The fact that the promises were allegedly

not fulfilled subsequent to the agreement does not evidence the falsity of the statements when made.

E. <u>Conversion</u>

Trustee defends his claim for conversion on the basis that McKenzie and Schlegel made demands on Reinhard Rauball for the return of EuroGas stock and debentures prior to the bankruptcy case. The flaw in Trustee's reasoning is his desire to disregard the Foreign Entities without any legal adjudication. Moreover, even assuming such demand was made, any claim for conversion would be a claim of the Foreign Entities, Okibi, Claron, Jeffrey and MCK, which held legal title of the stock and debentures, not a claim of this estate. Thus, Trustee has no standing to raise any claim for conduct prior to the commencement of the case.

As for Trustee's argument that the stock should have been turned over and payments should have been made to him, such argument fails since there has been no legal adjudication concerning the Foreign Entities. The stock was titled in the Foreign Entities, not McKenzie. The estate is not the owner of the stock. Even assuming Trustee is successful on his claims for reverse piercing, the claim is simply a remedy which imposes liability on the Foreign Entities for McKenzie's debts; it does not merge the assets of those entities. Thus, any demand by Trustee, if any, for turnover of the stock did not effectively withdraw the owner's consent.

F. <u>Misappropriation of Assets and Post-Petition Avoidance</u>

Trustee cites *Wingate v. Hajdik*, 795 S.W.2d 717 (Tex. 1990) in defense of his claim for misappropriation of assets. In the context of such misappropriation cause of action there exists a fundamental element missing from the instant case – a fiduciary duty on the part of defendants in handling corporate assets. No such duty exists in this case. The theory of misappropriation of assets does not apply in these circumstances.

<u>DEFENDANTS' REPLY TO TRUSTEE'S RESPONSE TO DEFENDANTS' AMENDED JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF</u> – Page 6

Trustee's claim for post-petition transfers must also fail. To the extent this claim pertains to payments by Wolfgang Rauball, this claim fails as the source of the payments was not property of the estate. The payments were made by third parties and received by McKenzie, not the Rauballs. As for any transfers to Ostrov Resources, Ltd., Trustee again seeks to totally disregard the separateness and distinctness of the entity without any legal adjudication. There is no basis in law supporting such assertions. As for the shares held by Reinhard Rauball in his capacity as "trustee," Reinhard Rauball would not constitute a transferee for purposes of Section 550.

G.  **Civil Conspiracy**

Trustee defends his conspiracy claim on the basis that it involves both pre and post petition conduct. As for the pre-petition conduct, Trustee concedes that McKenzie could not personally bring a conspiracy claim in light of his alleged participation. Trustee, however, contends that he can bring such claims by piercing the veils of the Foreign Entities, as a conspiracy claim owned by those entities. Trustee's reasoning fails on several counts.

First, Trustee does not have standing to assert such claims owned by the Foreign Entities. Second, even assuming a conspiracy existed, the Foreign Entities were part of it. Trustee's apparent contention that the theory of adverse domination would preclude an *in pari delicto* defense as to the Foreign Entities is baseless. The Fifth Circuit has consistently found that a corporation cannot escape the knowledge of a dominating sole shareholder. See, *FDIC v. Ernst & Young*, 967 F.2d 166 (5th Cir. 1992).

Moreover, Trustee's reliance on the adverse domination theory is misplaced as a basis to establish standing to assert possible claims of the Foreign Entities. The theory is a very narrow doctrine that is applied to suits by a corporation against its officers or directors in order to toll the statute of limitations for claims against wrongdoing officers and directors of the corporation until

they relinquish control of the institution. *Shrader & York*, 991 F.2d 216, 227 (5th Cir. 1993), *cert. denied*, 512 U.S. 1219 (1994). Since the claims are not against the officers and directors of the Foreign Entities, such theory does not apply in this case.

Third, the claims and causes of action asserted in the Third Amended Complaint are not brought on behalf of the Foreign Entities, but on behalf of the estate. Fourth, as previously established, a reverse piercing as to the Foreign Entities would not merge the assets into the estate. Thus, any potential causes of action the Foreign Entities have do not constitute property of the estate.

While Trustee agrees with the proposition that a corporation cannot conspire with itself, Trustee contends that the Rauballs were acting in their individual capacities as opposed to their corporate capacities. If true, then the acts and conduct of the Rauballs cannot, as a matter of law, be imputed to EuroGas as it was outside the scope of their employment and/or authority. In such case, there could be no conspiracy between the Rauballs and EuroGas as the Rauballs were acting in and for their own benefit, not the benefit of EuroGas, as Trustee contends. Accordingly, this claim should be dismissed at least as to EuroGas.

### H. Claims for Fraudulent Transfer Asserted Through Section 5.14(L)

As a basis for his fraudulent transfer claims, Trustee seeks to utilize Section 5.14(l) of the Texas Business Corporation Act. In order to apply this statute, Trustee contends that the Foreign Entities should be granted "domestic" or "Texas" status. Absent such authority, Trustee asserts that he may bring these claims on behalf of the Foreign Entities derivatively. Yet, Trustee fails to cite any authority for either of these propositions.

Trustee further contends that these claims are brought under alternative theories, either (i) in his own name, or (ii) derivatively in the entities' name, or (iii) under Section 5.14(L). The

flaw in this contention is that the Third Amended Complaint specifically limits the basis of his claims to "the authority granted in Section 5.14(L) of the Texas Business Corporation Act."

Trustee's reasoning is further flawed since the property allegedly transferred is that of MMPCO, not McKenzie. As MMPCO is not a debtor, Trustee has no standing to bring the causes of action on behalf of that corporation. Moreover, a reverse piercing claim does not afford Trustee that power since the assets of alter egos are not merged. Furthermore, as previously demonstrated, the allegations that the Foreign Entities are shams or were used for fraudulent purposes are irrelevant to the determination of alter ego and such evidence is not to be considered. See *Zahra*.

Trustee's argument that Section 5.14(L) is not availing since the Foreign Entities are considered legally distinct, as recognized by the Fifth Circuit in *Maiz*, and this section only allows shareholders to assert a cause of action which is derivative to the corporation. A fraudulent transfer action does not constitute a derivative action. Thus, the entities would not have standing to assert such claims. *See, In re Mortgage America*, 714 F.2d 1266, 1274 (5th Cir. 1983) (trustee steps into shoes of a creditor for the purpose of asserting fraudulent transfer claims under state law).

I.  **Reverse Piercing Claim**

In defense of his claim for piercing the corporate veils of MMPCO and the Foreign Entities, Trustee asserts that he should not be bound to selecting one theory for disregarding the corporate fiction. This contention has no basis in law. As previously stated herein and in Defendants' motion, Texas law only permits a "reverse-piercing" upon a finding of alter ego. Relief cannot be granted, as a matter of law, under the other strands of veil piercing. See, *Zahra*.

This claim as stated in the Third Amended Complaint, however, is based on the allegations that McKenzie created the Foreign Entities "for the purpose of perpetrating a fraud upon his creditors and, in fact, were a sham to perpetrate a fraud upon his creditors." *See*, Third Amended Complaint, ¶ 126. As such, the claim fails to state a claim upon which relief can be granted.

Trustee further contends that Article 2.21 of the Texas Business Corporation Act is not applicable. However, it is Trustee that contends that his authority to disregard the corporate veils is governed by that statute. *See*, Third Amended Complaint, ¶ 126.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully move for dismissal of the Third Amended Complaint or portions thereof as appropriate as the causes of action asserted therein fail to state claims upon which relief can be granted, and that Court grant them such other and further relief to which it may be justly entitled.

Respectfully submitted,

Mark A. Weisbart /by permission Susan C. Matthews
Mark A. Weisbart
TBN 21102650
Joseph O. Collins, Jr.
TBN 04625500
James S. Brouner
Texas Bar No. 03087285
KESSLER & COLLINS, P.C.
5950 Sherry Lane, Suite 222
Dallas, Texas 75225
Tel: 214-379-0722
Fax: 214-696-5455

ATTORNEY FOR EUROGAS, INC.,

DEFENDANTS' REPLY TO TRUSTEE'S RESPONSE TO DEFENDANTS' AMENDED JOINT MOTION
TO DISMISS TRUSTEE'S THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF – Page 10

*Robert B. Crotty / by permission Susan C. Matthews*
Robert B. Crotty
Texas Bar No. 05139800
CROTTY & JOHANSEN, L.L.P.
2311 Cedar Springs Rd., Suite 250
Dallas, TX 75201
Tel: 214-922-7555
Fax: 214-922-7557

ATTORNEYS FOR WOLFGANG RAUBALL
AND REINHARD RAUBALL

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Reply to Trustee's Response to Defendants' Amended Joint Motion to Dismiss Trustee's Third Amended Complaint and Supporting Brief was served by first class United States mail, postage prepaid, upon the individuals and entities listed below on this the 13th day of June, 2003.

*Mark A. Weisbart / by permission Susan C. Matthews*
Mark A. Weisbart

W. Steve Smith
2015 Crocker
Houston, TX 77006

Mike McKenzie
1770 St. James Pl #350
Houston, TX 77056

Mike McKenzie
2222 Country Club Blvd
Sugarland, TX 77478

Jeffrey Ltd.
c/o Sonia Nero Records Clerk
St. Vincent Trust Agency
Bonadie Street
Kingstown, St. Vincent/Grenadines

Richard L. Tate
206 So. 2nd
Richmond, TX 77469